Dr. Robert T. HOLLINGSWORTH,
Plaintiff,

v.

Joseph A. CALIFANO, Secretary, Department of Health, Education and Welfare, and Zion Grove Nursing Center, Limited and Daniel B. Mitchell, Defendants.

No. DC 79–62–S–O.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 5, 1979.

---

P. J. Townsend, Townsend, McWilliams & Holladay, Drew, Miss., for plaintiff.

Charles V. McTeer, McTeer & Bailey, Greenville, Miss., Tom Dawson, Asst. U. S. Atty., Oxford, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Plaintiff, Dr. Robert T. Hollingsworth (hereafter "Hollingsworth"), brings this action against Joseph A. Califano, Secretary of the Department of Health, Education and Welfare (hereafter "Secretary"); Zion Grove Nursing Center, Limited (hereafter "Zion Grove"); and Daniel B. Mitchell (hereafter "Mitchell"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., 28 U.S.C. §§ 1331 and 1361; and the Fifth and Fourteenth Amendments of the Constitution of the United States.

Hollingsworth seeks an injunction commanding the Secretary to withdraw a certificate of need issued by the Department of Health, Education and Welfare (hereafter "HEW") in favor of Zion Grove, and prohibiting the other defendants from the construction at Shelby, Mississippi, of an intermediate care nursing facility, until proper hearings with due notice of the same, have been afforded Hollingsworth.

Hollingsworth also seeks a declaratory judgment that Section 100.106(c)(3), Code of Federal Regulations, is void and unenforceable.[1]

The complaint also alleges that the Mississippi Health Systems Agency, Inc., on April 21, 1977, determined that the application of defendants Zion Grove and Mitchell for federal reimbursement related to the capital expenditure to construct Zion Grove Nursing Center should be approved contingent upon the fact that a valid certificate of need was not then outstanding in the area; that there was outstanding at the time, a certificate of need issued to Mediplex of Cleveland, the same having been issued on September 22, 1976; that on May 10, 1977, the Mississippi Health Planning and Development Agency recommended disapproval of reimbursement under Section 1122 of the Social Security Act, 42 U.S.C. § 1320a–1, to the Region IV Office of HEW at Atlanta; that thereafter defendant Mitchell requested and was granted a fair hearing pursuant to Section 100.106(c)(2), C.F.R.

1. Section 100.106(c)(3) provides:

    As soon as practicable, but not more than 45 days after the conclusion of a hearing, the hearing officer shall notify the person who requested the hearing, the designated planning agency, the other agencies described in § 100.105 who participated in the hearing, and other interested parties at the discretion of the hearing officer, of his decision and the reasons therefor. Such decision shall be publicized through local newspapers and public information channels. In the event that the hearing officer fails to provide notice as required above within 45 days after the conclusion of a hearing, such failure to provide notice shall have the effect of a finding that the proposed capital expenditure is in conformity with the standards, criteria, and plans described in § 100.104(a)(2).

The complaint alleges that the fair hearing was held on June 17, 1977, at Jackson, Mississippi, in the third floor auditorium of the Watkins Building, 510 George Street. The Fair Hearing Officer, Honorable Marshall Lusk, appointed to hold the hearing by the Governor of Mississippi, Honorable Cliff Finch, took the matter under advisement and failed to render a decision within 45 days of the conclusion of the fair hearing. The failure of the hearing officer to render a decision within 45 days resulted in the issuance by the Secretary of a "Notice of Determination Under Section 1112, Capital Reimbursement Not To Be Excluded." [2]

The complaint charges that the hearing officer did not comply with the notice provisions of Section 1000.106(c)(2)(i) and (ii). These provide:

(i) The hearing shall be open to the public and shall be publicized through local newspapers and public information channels.

(ii) The person proposing the capital expenditure, the other agencies described in § 100.105, and other interested parties, including representatives of consumers of health services, shall be permitted to give testimony and present arguments at the hearing.

Plaintiff Hollingsworth requested a reconsideration of the determination by the Regional Health Administrator (RHA), Region IV regarding the capital expenditure proposed on behalf of Zion Grove Nursing Center, to construct a 120-bed intermediate care facility at Shelby. The reconsideration was denied on February 7, 1979. A copy of the denial is attached hereto as "Appendix II".

Defendants seek a dismissal of the action on two grounds. They contend (1) that the determination of the Secretary is not subject to judicial review; and (2) that Hollingsworth does not have such a personal stake in the action of the Secretary as to clothe him with standing to question the determination.

## I. Jurisdiction Based on the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

The Administrative Procedure Act, provides in pertinent part:

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review;

. . .

5 U.S.C. § 701(a)(1).

The applicable Social Security Statute, 42 U.S.C. § 1320a–1, provides in pertinent part:

(f) Any person dissatisfied with a determination by the Secretary under this section may within six months following notification of such determination request the Secretary to reconsider such determination. A determination by the Secretary under this section shall not be subject to administrative or judicial review.

42 U.S.C. § 1320a–1(f).

Circuit Judge James P. Coleman, speaking for the Fifth Circuit in *Graham v. Caston*, 568 F.2d 1092 (1978), said:

█ Federal jurisdiction is dependent upon congressional grant. If Congress so chooses, judicial review of administrative decisions may be withheld. (Citations omitted).

█ Upon a clear statutory command, a jurisdictional withdrawal statute is persuasive evidence of Congress' intent to preclude judicial review. (Citations omitted).

█ If an administrative official clearly departs from statutory authority, the administrative action is subject to judicial review even though a jurisdictional with-

---

**2.** The notice is sometimes herein referred to as the "certificate of need". A copy of the notice is attached hereto as "Appendix I."

drawal statute is otherwise applicable. (Citations omitted).

■ Likewise, judicial review is available where the administrative agency fails to follow procedures outline in regulations adopted by that administrative agency. (Citation omitted).

■ According to § 518, the decision of the Secretary of HUD to grant or deny reimbursement for expenditures to alleviate structural defects "shall be final and conclusive and shall not be subject to judicial review", 12 U.S.C. § 1735b(c) (1970). Quite clearly, this jurisdictional withdrawal statute governs those instances in which the Secretary reviews the claim and decides it, rendering judicial review unavailable.

568 F.2d at 1097.

■ It seems clear that the court does not have jurisdiction to review the determination of the Secretary to issue the certificate to defendants Zion Grove and Mitchell.

II. *The Due Process Claim.*

■ Hollingsworth contends that the regulation under which the Secretary acted in issuing the notice of determination is unconstitutional because Hollingsworth was not afforded the opportunity of participating in the fair hearing afforded defendants. The determination was made in accordance with Section 100.106(b)(3), C.F.R. This section provides that the fair hearing officer shall give notice of his decision within 45 days of the conclusions of the hearing, and a failure to do so shall have the effect of a finding that the proposed capital expenditure is in conformity with the standards, criteria, and plans described in and required by regulations promulgated by HEW.

The court concludes that the regulation of which Hollingsworth complains is reasonably required in order to promptly accomplish the purpose of the remedial legislation here under consideration.

The court agrees with the reasoning of the administrator in denying the Hollingsworth request for reconsideration.

■ The complaint alleges that Hollingsworth owns a private 59-bed nursing facility at Duncan, Mississippi. It is reasonable to infer that the action of the Secretary will create competition for this facility. Hollingsworth contends that denial of the right to be heard in opposition to the granting of the certificate, constitutes a taking of his property without due process of law. The court does not believe that Hollingsworth has a constitutionally protected right to be free from competition in the operation of the Duncan Nursing Home.

The Supreme Court discussed the injury an individual must suffer in order to have standing to question putatively illegal action in *California Bankers Assn. v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). There, the court said:

"Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.' There must be a 'personal stake in the outcome' such as to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' (Citation omitted) . . . Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct. (Citation omitted). The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (Citations omitted).

■ The court concludes that Hollingsworth has not sustained nor is in immediate danger of sustaining some direct injury resulting from the issuance by the Secretary of the certificate of need.

The regulations, 100.106(c) C.F.R. provides "the Agreement [Secretary-State Agreement] shall provide that the designated planning agency *will grant to a person proposing a capital expenditure,* an opportunity for a fair hearing with respect to the

findings and recommendations of the designated planning agency, and will establish and maintain procedures for such appeal." (Emphasis supplied).

█ The fair hearing contemplated is held for the benefit of the applicant who proposes a capital expenditure. It is not designed to protect the rights of an individual who wishes to oppose the proposal for personal economic reasons.

The court concludes that Hollingsworth does not have the requisite standing to question the action of the Secretary in giving effect to a regulation lawfully promulgated by HEW and granting the certificate.

## APPENDIX I

DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE
PUBLIC HEALTH SERVICE
REGIONAL OFFICE_____ IV_____
NOTICE OF DETERMINATION UNDER SECTION 1122
CAPITAL REIMBURSEMENT NOT TO BE EXCLUDED

Administrator
Zion Grove Nursing Center
P.O. Box 195
Mound Bayou, Mississippi  38762                      368

reviewed the findings and recommendations of the appropriate State and areawide health planning agencies with respect

proposed capital expenditure of $ __1,160,000_____ for___New Facility_____
                          (Dollar Amount)                        (Identification of Project)
ruction of 120 bed IC Nursing Home_____

on behalf of____Zion Grove Nursing Center, Shelby, _____ submitted to me by the Designated Planning
                    (Name of Health Care Facility or HMO)
of Mississippi_____on____August 23, 1977_____The date of the final State
            (State)                            (Date)
was August 8, 1977_____ ℱℬ
            (Date)

exists under Section 1122 for excluding reimbursement for expenses related to this capital expenditure from payments made for services under Titles V, XVIII, or XIX of the Social Security Act for the reasons indicated below. (Indicate a or b or c).

☐ I have determined that the expenditure is not subject to the provisions of Section 1122 because

(1) ☐ It is not a capital expenditure as defined in Subsection 1122(g) of the statute OR

(2) ☐ It falls within the "formal plan" exemption described in Section 100.103 of the regulations OR

(3) ☐ It is otherwise not subject to review because _____

☐ I have determined that the proponent did give timely notice AND I have determined that the State found that the proposed capital expenditure would be consistent with the standards, criteria, or plans developed under the Public Health Service Act or the Mental Retardation Facilities and Community Mental Health Centers Construction Act of 1963 for meeting the need for adequate health care facilities in the area covered by the plan or plans so developed.

☐ I have determined that the proponent did give timely notice AND I have determined that the State found that the proposed capital expenditure would NOT be consistent with the standards, criteria, or plans developed under the Public Health Service Act or the Mental Retardation Facilities and Community Mental Health Centers Construction Act of 1963 for meeting the need for adequate health care facilities in the area covered by the plan or plans so developed.
BUT
I have determined that the State failed to observe the procedural safeguards checked below in arriving at its findings and recommendations for the reasons indicated below.

(1) ☐ The DPA did not respond to the proponent's timely notice within a reasonable time (Regulation §.100.106(a)(4))

(2) ☐ The DPA did not consult or take into account the findings and recommendations of the required health planning agencies (§100.106(a)(1))

(3) ☐ The DPA did not afford the proponent an opportunity for a fair hearing (§100.106(c))

(4) ☐ If a fair hearing was requested by the proponent, the State failed to commence the fair hearing process or to notify the proponent of its decision within the time required (§100.106(c))

(5) ☐ Other_____

PROVIDE DETERMINATION(S) AS APPROPRIATE:

| _(signature)_ C. A. Reich, M.D. | (NAME) REGIONAL HEALTH ADMINISTRATOR C. A. Reich, M.D., M.P.H. | DATE 9/27/77 |

(See reverse side for additional information)

APPENDIX II

Feb. 7, 1979

Frank L. McWilliams, Esq.
Townsend, McWilliams & Holladay
P.O. Box 107
Indianola, Mississippi 38751

Dear Mr. McWilliams:

This is in reply to your letter of March 22, 1978, in which you requested reconsideration of the determination made by the Regional Health Administrator (RHA), Region IV, regarding the capital expenditure proposed on behalf of Zion Grove Nursing Center (Zion Grove), Shelby, Mississippi, to construct a 120-bed intermediate care facility. With respect to this capital expenditure, Dr. George A. Reich, RHA, made the following determinations:

(1) The proponent of the capital expenditure to construct Zion Grove gave notice of an intention to make this expenditure in the timely fashion required by the statute and regulations.

(2) The designated planning agency (DPA) found that the proposed capital expenditure would not be consistent with the standards, criteria, or plans developed under the Public Health Service Act . . . for meeting the need for adequate health care facilities in the area covered by the plan or plans so developed, and

(3) The State of Mississippi failed to notify the proponent of its decision within 45 days following the conclusion of the fair hearing requested by the proponent.

It is my understanding from reading your request for reconsideration that your argument is not with the substance of any of the three determinations made by the RHA, but, rather, that you disagree with the results which follow from the third determination; viz., that the State shall be deemed to have found the proposal to be consistent with the appropriate standards, criteria, and plans and, thus, that reimbursement shall not be withheld.

Since you do not directly contest any of the three determinations made by the RHA, I hereby affirm those determinations. Further, after a thorough study of the matters contained in the case file and the arguments presented in your request of March 22, 1978, I cannot find that any result other than that discussed above is possible in this instance. For this reason, Federal reimbursement related to the capital expenditure to construct Zion Grove Nursing Center will not be withheld.

Your arguments against full reimbursement are directed at two of the events which occurred during the review process, and I will summarize the points you made with respect to each event. Following this summary, I will respond to each of these points and indicate my reason for finding that they do not affect reimbursement.

Event 1. The State failed to provide adequate notice of the fair hearing to all interested parties.

(1) First, you contend that the above mentioned failure rendered the entire hearing process void. The fair hearing officer did not have the authority to rule in the matter because the "interested and necessary parties" to the action were not present at the hearing due to insufficient notice. You contend that this failure to provide sufficient notice to these parties caused the hearing to be more in the nature of an "ex parte proceeding" than a fair hearing, which violated the Federal requirements for such hearings.

The regulation cited to support your argument reads, in pertinent part, as follows:

"The person proposing the capital expenditure, the other agencies described in § 100.105, and other interested parties . . . shall be permitted to give testimony and present arguments at the hearing." (CFR 100.106(c)(2)(ii))

The fact that an interested party is permitted to give testimony and present arguments, however, is irrelevant to the question of whether they must receive notice. Our regulations are silent as to whether such notice is required. Furthermore, even if there were defects in the notice or fair hearing process (i. e., if applicable State

procedures were violated), such defects would result in a conclusion that a fair hearing as required was not held, which would have the effect of a finding that the proposed capital expenditure is consistent with applicable standards, criteria, and plans.

(2) Second, you argue that the Department may not approve any action of the State unless the procedures set out in the regulations are followed by the State. As applied to these facts, you argue that the Department may not approve a finding of "conformity" because the State failed to provide sufficient notice to all interested parties of the date and place of the fair hearing.

This argument fails for two reasons. First, neither the statute nor the regulations contain a statement of the level of conduct required of a DPA or a State prior to the Department's acceptance of the State's action with respect to any particular proposed capital expenditure. While a continued failure by the State to follow an important review procedure might be cause for the Department to reprimand the DPA or to terminate the Section 1122 Agreement with the State, a single instance of failure does not affect the outcome of the review, except where express provision for such an effect is found in the language of the statute or the regulation.

Second, since every 1122 review must result in both a finding by the State and a determination by the Secretary after notice of intention to make a capital expenditure is received, the review process has been structured to ensure that these occur within a reasonable length of time. Consequently, certain undue delays in the process of review by the State will accrue to the benefit of the proponent of the capital expenditure. For example, any undue delay in concluding a fair hearing will result in the equivalent of a finding of conformity. Furthermore, if the hearing itself were found not to be proper due to failure to notify interested parties, a finding of conformity would still issue since this would mean that the State

had failed to provide the proponent with a fair hearing within 30 days following his request for one. The regulation provides for this result.

Event 2. The final decision of the State was arrived at through inaction on the part of the fair hearing officer, rather than through a decision by him.

(1) The first argument here is that the regulations "by implication" require the fair hearing officer to make a decision and give reasons therefore, and failure to make such a decision is sufficient grounds for reconsideration.

(2) The second argument is that the regulations imply that a decision of the DPA can be reversed or modified only by a decision of the fair hearing officer which explicitly contains such a reversal or modification, and the lack of a decision by the fair hearing officer is insufficient to reverse or modify.

Both of these arguments fail for the same reason. The regulations expressly contemplate the situation where a fair hearing officer fails to make a timely decision, and provide for the result which shall occur in that case, irrespective of the previous finding of the DPA. The pertinent section (100.106(c)(3)) reads:

> In the event that the hearing officer fails to provide notice as required above within 45 days after the conclusion of a hearing, such failure to provide notice *shall* have the effect of a finding that the proposed capital expenditure is in conformity with the standards, criteria, and plans described in § 100.104(a)(2). (Emphasis added)

Since I do not find merit in your arguments, I am affirming the determinations of the RHA, and reimbursement will not be withheld for the capital expenditure to construct the Zion Grove Nursing Center, Shelby, Mississippi. For the record, I am correcting the RHA's determination to show that the capital expenditure proposed was in the amount of $1,438,000 (rather than

$1,160,000 as erroneously reported on the Notice of Determination form).

Sincerely yours,
/s/ Henry A. Foley, Ph.D.
Henry A. Foley, Ph.D.
Administrator